UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ACXELL JETHZAEL GARCIA
BLANCO,

       Petitioner,

    v.

WARDEN GLADES COUNTY
DETENTION CENTER, FIELD
OFFICE DIRECTOR MIAMI
FIELD OFFICE, U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT, ATTORNEY
GENERAL PAMELA BONDI,
SECRETARY KRISTI NOEM,

       Respondents.

Case No. 2:26-cv-390-KCD-DNF

## ORDER

Petitioner Acxell Jethzael Garcia Blanco, an 18-year-old citizen of Venezuela, has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He points to a straightforward statutory command: under federal law, the Government cannot detain a noncitizen who holds Temporary Protected Status ("TPS"). *See* 8 U.S.C. § 1254a(d)(4). Because he believes he is a TPS beneficiary, Blanco argues his ongoing confinement violates both the Immigration and

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Nationality Act and the Fifth Amendment's Due Process Clause. (Doc. 1 at 11-12.)

If Blanco actually held TPS, he might have a case. But the Government counters with a fatal flaw in his premise: he possesses no such status. Blanco's TPS expired in September 2025. And while he applied for an extension, the Government never approved it. Instead, the Department of Homeland Security terminated the TPS designation for Venezuela entirely.

Blanco tries to overcome this reality by pointing to a California district court ruling that invalidated the Secretary's termination of the Venezuelan TPS program. But the Supreme Court stayed that decision pending appeal. *See Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). Consequently, as things stand today, Blanco's TPS status remains expired.

A writ of habeas corpus is a mechanism to test the legality of physical confinement, and the burden falls squarely on the petitioner to show that his custody violates the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3); *Whitfield v. United States Sec'y of State*, 853 F. App'x 327, 329 (11th Cir. 2021). Because Blanco's entire petition rests on a protective status he does not presently possess, he cannot meet that burden. The Government wins, and the petition must be denied.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Government kicks things off with a familiar jurisdictional playbook, insisting that the Immigration and Nationality Act ("INA") strips this Court of the power to hear Blanco's claims. (Doc. 7 at 3-4.) The Court has seen these arguments before, and the answer remains the same. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). The Government relies on 8 U.S.C. § 1252(g), but that provision is not a catch-all shield against habeas review. It narrowly forecloses judicial second-guessing of three discrete executive actions: commencing proceedings, adjudicating cases, and executing removal orders. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

3

It does not block a collateral challenge to the statutory legality of physical custody, like presented here. With that jurisdictional underbrush cleared away, the Court turns to the merits.

**A. TPS**

The TPS program allows the federal government to grant temporary protected status to a national of a foreign state in designated cases of ongoing armed conflict, environmental disaster, or other extraordinary and temporary conditions that prevent safe return. 8 U.S.C. § 1254a(b)(1). Congress enacted the TPS statute "out of concern that the forced repatriation of these individuals could endanger their lives or safety." H.R. Rep. 100-627, at 6 (1988). Under 8 U.S.C. § 1254a(a)(1)(B), the Attorney General may designate a country for TPS and grant nationals of that country protection from removal, as well as work authorization in the United States for the period their home country is designated under the program. The statute also indicates that, periodically, the Secretary "shall review the conditions in the foreign state ... for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met." 8 U.S.C. § 1254a(b)(3). In the event the Attorney General finds that the country no longer merits TPS designation, she "shall terminate the designation by publishing notice in the Federal Register of the determination." *Id.*

On September 8, 2025, then-Secretary of Homeland Security Kristi Noem published a notice in the Federal Register terminating TPS status for Venezuela. (Doc. 7 at 4.) The termination became effective on November 7, 2025—sixty days after publication of the notice, the shortest allowable transition period allowed by the statute.

It is true that Blanco once held TPS. But his protected status facially expired on September 10, 2025. (Doc. 1-4 at 1.) When that day came and went, his status went with it. Blanco protests that he filed a renewal application back in July 2025, well before the program was terminated. (*See* Doc. 1-3.) But that extension was never approved. (*See* Doc. 7 at 4.) A pending application does not confer TPS status or its attendant protections against detention. *See Dassas v. Mordant*, No. 2:26-CV-247-JES-DNF, 2026 WL 653686, at *1 (M.D. Fla. Mar. 9, 2026). Because the Government never actually approved his renewal application, Blanco cannot claim the benefit of a TPS extension. He is, in short, asking the Court to enforce a legal status he does not actually hold. *See Ceballos* v. *Hardin*, No. 2:26-CV-00658-SPC-NPM, 2026 WL 911295, at *2 (M.D. Fla. Apr. 3, 2026) (finding Venezuelan petitioner did not gain the benefit of a TPS extension when the government did not grant the application).

Blanco tries to sidestep this expiration problem by pointing across the country to a district court in California. In *National TPS Alliance v. Noem*,

that court declared the Secretary's termination of the Venezuelan TPS program unlawful. 798 F. Supp. 3d 1108 (N.D. Cal. 2025). Blanco argues that because the termination was declared invalid, his TPS magically springs back to life. But that argument ignores the Supreme Court's intervention, which stayed the California court's order "pending the disposition of the Government's appeal." *Noem*, 146 S. Ct. at 24. And even if we brush past the stay, the California litigation cannot do the heavy lifting Blanco asks of it. A court order enjoining the termination of a nationwide program does not retroactively resurrect an individual status that lapsed months earlier. By the time the Secretary ended the program—and certainly by the time the district court weighed in—Blanco's TPS had expired on its own terms. The *National TPS Alliance* decision might keep the door open for those who still hold a valid status, but it does not reach back in time to rescue someone whose protection had already run out. *See, e.g.*, *Perez v. Schmidt*, No. 26-CV-0158-BHL, 2026 WL 867765, at \*5 (E.D. Wis. Mar. 30, 2026); *see also Pirela-Altamar v. Raycraft*, No. 1:26-CV-388, 2026 WL 820371, at \*3 (W.D. Mich. Mar. 25, 2026) ("At this time, based on the procedural history of *National TPS Alliance v. Noem*, this non-binding case does not affect the Court's analysis in this habeas action.").

Blanco has failed to show that he currently has TPS or that he had TPS when taken into ICE custody. So his claim attacking his detention under § 1254a(d)(4) must be rejected.

**B. Due Process**

Blanco separately argues that his detention violates the Fifth Amendment "because it is not rationally related to any immigration purpose; because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner; and because it lacks any statutory authorization." (Doc. 1 at 12.) This claim also falls short.

To be sure, the Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at \*7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Blanco cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. The INA specifically authorizes the Government to detain noncitizens while they await a final removal determination. *See* 8 U.S.C. § 1226(a). And the reasons for keeping Blanco locked up are perfectly legitimate regulatory goals, not punitive ones. After a hearing, an immigration judge concluded that Blanco

poses a danger to the community and a flight risk. (Doc. 7-1 at 12.) Keeping a noncitizen in custody to protect the public and ensure he actually shows up for his deportation is simply the machinery of the immigration system doing its job.

### III. Conclusion

Habeas corpus is a powerful tool, but it requires a fundamental premise: that the government is holding someone unlawfully. Blanco cannot clear that bar. He has no valid TPS to shield him from custody, and his ongoing detention sits comfortably within constitutional bounds. The Government is simply holding him, as the law permits, while it processes his removal case. Because his confinement remains lawful, this Court has no basis to intervene. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

**ORDERED** in Fort Myers, Florida on April 20, 2026.

Kyle C. Dudek
United States District Judge

9